**SHERR LAW GROUP, LLP**
By: Anthony R. Sherr, Esquire
Identification No. 44603
101 W. Airy Street, Ste. 100
Norristown, PA 19401
(484)591-3000

Attorney for Pennsylvania
Manufacturers' Association
Insurance Company and PMA
Management Corp.

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY 380 Sentry Parkway Blue Bell, PA 19422 AND PMA MANAGEMENT CORP. 380 Sentry Parkway Blue Bell, PA 19422 | : : : : : : : : : : | |
| Plaintiff | : : | |
| vs. | : : | NO.: 2021-01892 |
| ESHAI CORPORATION, dba COURIER DISTRIBUTION SYSTEMS, LLC 6650 Sugarloaf Parkway Duluth, GA 30097-4359 And COURIER DISTRIBUTION SYSTEMS, LLC 6650 Sugarloaf Parkway Duluth, GA 30097-4359 | : : : : : : : : : | JURY TRIAL DEMANDED |
| Defendants | : | |
| And USMAN ESHAI A/K/A UTHMAN ESHAI Individually and as a member of Eshai Corporation, dba Courier Distribution Systems, LLC 3140 Sugarloaf Drive Duluth, GA 30097 | : : : : : : : : | |

| | |
|---|---|
| And | : |
| ALI ESHAI individually and as a member | : |
| Of Eshai Corporation, dba Courier | |
| Distribution Systems, LLC | : |
| 3114 Touchton Court | : |
| Duluth, GA 30097 | : |
| | : |
| And | : |
| NAJEEB ESHAI individually and as a | : |
| Member Of Eshai Corporation, dba Courier | : |
| Distribution Systems, LLC | : |
| 4636 Westchester Court | : |
| Duluth, GA 30096 | : |
|     Additional Defendants | : |

---

## AMENDED COMPLAINT

And now comes the Plaintiffs, Pennsylvania Manufacturers' Association Insurance Company ("PMAIC") and PMA Management Corp. ("PMA") by and through their authorized counsel of record, Sherr Law Group LLP and seeks $8,617,234.75, plus attorney fees, interest and costs of this action and states as follows:

## THE PARTIES

1. Plaintiffs are corporations duly organized under the laws of the Commonwealth of Pennsylvania and authorized to do business in several states including Pennsylvania, with their principle place of business located at 380 Sentry Parkway, Blue Bell, Montgomery County, Pennsylvania 19422.

2

2. Defendants are all named insureds on four (4) relevant policies of insurance and parties to an Agreement For Third Party Claims Handling Services and an Amendment(s) which were issued by Plaintiffs and entered into by the Parties in October and November of 2018.

3. Defendants, during all relevant time periods, regularly and systematically conducted business in Pennsylvania, and are authorized to do business in the Commonwealth.

4. The contracts which form the basis of Plaintiffs' causes of actions were all entered into in Montgomery County, Pennsylvania.

## JURISDICTION

5. Jurisdiction in this matter is based upon 28 U.S.C. § 1332 in that the matter in controversy greatly exceeds $75,000 and is between citizens of different states.

6. All defendants are Georgia LLCs of the state of Georgia and all members of the LLCs are domiciled in Georgia.

7. All plaintiffs are incorporated in the Commonwealth of Pennsylvania.

8. Complete diversity exists between every defendant and every plaintiff.

9. Eshai Corporation, dba Courier Distribution Systems, LLC. ("Eshai") was the named insured on policies of insurance issued to it by PMAIC in the Commonwealth of Pennsylvania. (See Policy No. 201800 1037944A; 201800

1037944B; 151800 1037944; and 301800 1037944, (relevant declaration sheets for each policy are attached hereto and designated as Exhibits "1", "2", "3" and "4" respectively).

10. PMAMC and Eshai entered into an Agreement for Third Party Claims Handling Services (hereinafter "TPA Agreement") (attached hereto and designated as Exhibit "5"). These contracts were entered into and performed in Pennsylvania.

11. Eshai, upon information and belief, has a Registered Agent in Pennsylvania.

12. This action is to recover remaining estimated annual premium, final audited premium, retrospectively- rated premium, costs, expenses, and other obligations under the insurance policies and the TPA Agreement(s), which Eshai failed to pay.

## FACTUAL ALLEGATIONS

13. Plaintiffs incorporate herein by reference their allegations of paragraphs 1 through 12 as if more completely set forth herein.

14. On or about October 15, 2018, PMAIC issued, and Defendants accepted, Workers' Compensation and Employers' Liability Insurance policies bearing Policy No. 201800 1037944A, for the policy period of 10-15-2018 to 10-15-2019 ("WC Policy A"). (See Exhibit "1").

15. On or about October 15, 2018, PMAIC issued, and Defendants accepted, Workers' Compensation and Employers' Liability Insurance policies bearing Policy No. 2018001037944B, for the policy period of 10-15-2018 to 10-15-2019 ("WC Policy B"). (See Exhibit "2").

16. On or about November 1, 2018 PMAIC issued, and Defendants accepted, a Commercial Auto Insurance policy bearing Policy No. 151800 1037944 ("Auto Policy"). (See Exhibit "3").

17. On or about November 15, PMAIC issued, and Defendants accepted, a Comprehensive General Liability policy bearing Policy No. 301800 1037944 ("CGL Policy") (see Exhibit "4").

18. In consideration for the issuance of the 4 insurance policies, Defendants agreed to timely pay all premiums/surcharges/administrative fees and any other amounts due under the terms of each policy as calculated by PMAIC.

19. Despite demand, Eshai failed to make payments due under the terms of the policies and any midterm endorsements thereto as set forth more fully at length herein below.

20. On or about October 15, 2018, PMAMC, Eshai and PMAIC entered into an Agreement for Third Party Claims Handling Services. (See Agreement for Third Party Claims Handling Services attached hereto and designated as Exhibit "5" hereinafter referred to as "TPA Agreement").

21. In consideration for PMAMC providing certain claims handling services, Eshai agreed to timely pay the fees and costs as set forth in the contract (Exhibit 5).

22. PMAMC performed all of its obligations under the agreement.

23. Despite demand, Eshai has refused to pay the amounts due and owing under the TPA contract and any amendments thereto.

## COUNT I
## BREACH OF CONTRACT – ALL INSURANCE POLICIES

24. Plaintiff restates and re-alleges paragraphs 1 through 23 as if more fully set forth herein.

25. As previously referenced, PMAIC issued, and Defendants accepted, four Policies of Insurance for the policy periods of 10-15-2018 to 10-31-2019, 11-1-2018 to 11-1-2019 and 11-15-2018 to 11-15 2019 as indicated. (See Exhibit "1-4").

26. In return for the issuance of the Policies and for coverage provided thereunder, Defendants agreed to pay timely all premiums/surcharges/administrative expenses and other charges due PMAIC under the terms of the Policies.

### WORKERS' COMPENSATION POLICIES

27. The two Workers' Compensation Policies (A & B) were effective October 15, 2018 through October 31, 2019 and had Total Estimated Annual

Premiums of $2,192,823.00 and $518,840.00, respectively at policy inception. (See Exhibits 1 & 2).

28. Defendants selected the Retrospective Rating Plan for the two Worker's Compensation Policies (A & B). (See Plan Selection Form effective 10/15/18 attached hereto and designated as Exhibit "6").

29. This document was signed by Jim Blanchard, the CFO of defendants on or about 3/6/2019 (See Exhibit "6").

30. The Plan Selection form in pertinent part stated:

> By signing this Plan Election Form the insured certifies that s/he understands and agrees:
>
> 1. The choice of a plan will result in an adjustment of the audited premium based upon incurred losses, which include Allocated Loss Adjustments Expenses ("ALAE"), during the policy period;
> 2. Retrospectively rated insurance policies are subject to multiple annual calculations and/or adjustments which may result in additional or return premium. The ultimate premium payable will be determined solely by the Company based upon the calculation of incurred losses, which include ALAE, and audited payrolls relating to the Policy period…

(See Exhibit "6").

31. The Plan Selection form goes on to state:

> The advance premium of **$2,627,946** for the Policy is merely an estimate of the ultimate retrospective premium payable by the insured(s) to the Company;

7

(See Exhibit "6").

## **WORKERS' COMPENSATION INITIAL PREMIUMS**

32.     As indicated above, the Total Estimated Annual Premium for the Workers' Compensation Policy "A" was $2,192,823 at policy inception and The Total Estimated Annual Premium for the Workers' Compensation Policy "B" was $518,840 at inception.  (See Exhibit 1 & 2). However, due to the economic and geographical expansion of Eshai's business during the 2018 – 2019 policy year, certain mid-term endorsements, most notably Mid-Term Endorsement No. 5 to the Workers' Compensation "A" Policy expanded coverage, increased the risk and resulted in additional premiums and surcharges due PMAIC in the amount of $1,357,267. (See Midterm Endorsement No. 5 attached hereto and designated as Exhibit "7").

33.     After applying all premium payments made and/or any credits earned by Eshai on the two Workers' Compensation Policies A & B, there still remained an amount of unpaid Estimated Annual Premium and Midterm Endorsement premium in the amount of $434,769.00.

34.     Despite demand, Eshai has failed, refused and neglected to pay PMAIC $434,769.00 due and owing in breach of its obligations to pay timely all premiums when due under the two Workers' Compensation policies of insurance.  (Please refer to Exhibits "1" & "2" and paragraph 35 below )

## WORKERS'COMPENSATION AUDITED AND RETROSPECTIVELY-RATED PREMIUMS

35.     In accordance with the terms and conditions of the two Workers' Compensation policies, on or about September 10, 2020 PMAIC calculated the Final Audits which reconciled actual payroll at the end of the policy year with the estimated payroll at policy inception.  The Final Audit on the "A" Policy determined Eshai owed PMAIC additional premium in the amount of $2,114,563.00 while the Final Audit on the "B" Policy determined Eshai owed PMAIC additional premium in the amount of  $510,311.00. (See Summary Sheets of the Workers' Compensation Final Audits on Policy A & B attached hereto and designated Exhibits "8" and "9").

36.     Further, in accordance with the terms and conditions of the two Workers' Compensation policies and the signed Plan Selection Form, PMAIC calculated the 1st Retrospective Adjustment for the combined A&B Policies based upon the incurred losses on claims filed by Eshai's injured workers which determined that Eshai owed PMAIC additional retrospective premium in the amount of $4,709,061.00. (See 1st Retrospective Adjustment Summary bill combining Final Audits A&B and 1st Retrospective Adjustment indicating a total due PMAIC of $7,333,935.00 on  page 2; 1st Retrospective Adjustment indicating $4,709,061.00 due PMAIC on page 3 attached hereto and designated Exhibit "10").

37. On or about September 24, 2020 plaintiffs provided Eshai a Statement/Invoice showing amounts due and owing after Final Audit/Surcharge/Deferred Premium and 1st Retrospective Adjustment/Surtax for the two Workers Comp. Policies. (See Exhibit "11"). This Statement/Invoice did not include the aforementioned unpaid initial premiums in the amount of $434,769.00, however, a later Statement/Invoice dated 2/8/2021 does incorporate these aforementioned unpaid premiums in the amount of $434,769.00 for a total of $7,768,704 due PMAIC on the two Workers' Comp. Policies A & B [$7,353,354.00 on "A" + $415,350.00 on "B"](See Statement/Invoice dated 2/8/21 which combines total premiums due PMAIC on all four PMAIC issued policies attached hereto and designated as Exhibit "12").

38. The September 24, 2020 Statement/Invoice shows an amount due and owing of $7,333,935.00 for the Final Audits, Surcharge/ Deferred Premium and 1st Retrospective Adjustment/Surtax for the Workers Comp. Policies only. (See Exhibit "11").

39. Despite demand, Eshai has refused to pay this amount due and owing in breach of its obligations under the two Workers' Comp. policies of insurance.

40. Defendants have failed, refused and neglected to pay PMAIC $7,333,935.00 in outstanding Final Audits, Surcharge/ Deferred Premium and 1st Retrospective Adjustment/Surtax listed on the September 24, 2020 Statement

/Invoice and due under the two Workers' Comp. Policies leaving PMAIC without the use of this sum since the issuance of the retrospective adjustments.

## TOTAL WORKERS' COMPENSATION PREMIUMS DUE PMAIC

41. Collectively however, Defendants have failed, refused, and neglected to pay PMAIC a total of $7,768,704.00 [$7,353,354.00 on "A" + $415,350.00 on "B" in outstanding Estimated Annual Premium and Midterm Endorsement premium, Final Audit and Retrospectively-rated premiums/state assessments due under the two Workers' Comp. Policies leaving PMAIC without the use of this sum since the issuance of the retrospective adjustments. (See Statement/Invoice dated 2/8/21 Lines1 & 2 of Exhibit "12")

## AUTO POLICY

42. The "Auto" policy was effective November 1, 2018 through November 1, 2019 and had a total initial premium (including taxes and surcharges) due of $2,315,183.24 at policy inception. (See Exhibit "3"). After applying all premium payments made and/or any credits earned by Eshai on the Auto policy, there still remained an amount of unpaid premium in the amount of $378,613.55. (See Exhibit "12").

43. Despite demand, Eshai has failed, refused and neglected to pay PMAIC $378,613.55 due and owing in breach of its obligations to pay timely all premiums when due under the auto policy of insurance.

## **COMMERCIAL GENERAL LIABILITY**

44. The "CGL" policy was effective November 15, 2018 through November 15, 2019 and had a Premium due of $14,549.00. (See Exhibit "4")

45. In July 2020, PMAIC conducted and completed a Final Audit under the terms and conditions of the CGL Policy which determined Eshai owed additional premiums in the amount of $24,753.00. (See the CGL Final Audit attached hereto and designated as Exhibit "13").

46. After applying all premium payments made and/or any credits earned by Eshai on the CGL policy, there still remained an amount of unpaid premium in the amount of $22,601.46. (See Exhibit "12").

47. Despite demand, Eshai has failed, refused and neglected to pay PMAIC $22,601.46 due and owing in breach of its obligations to pay timely all premiums when due under the CGL policy of insurance.

WHEREFORE, it is respectfully demanded that this Court enter judgment in favor of Plaintiff, PMAIC and against Defendants in the amount of $8,169,919.01, plus interest and costs of this action, including but not limited to reasonable

attorneys' fees incurred in prosecuting this action plus such further relief as this Court deems just and proper on Count 1 of plaintiffs Complaint.

## COUNT II

## BREACH OF CONTRACT – TPA AGREEMENT

48. PMAIC incorporates by reference its allegations in paragraphs 1 – 44 as if set forth fully herein.

49. PMA Management Corp. ("PMA") is a Pennsylvania Corporation with its principle place of business located at 380 Sentry Parkway. Blue Bell, PA 19422.

50. PMA, PMAIC and Eshai entered into an Agreements For Third Party Claims Handling Services ("TPA Agreement") (A true and correct copy of which is attached hereto and designated as Exhibit "5").

51. The TPA Agreement was entered into and became effective October 15, 2018.

52. Pursuant to the insurance policies delineated above, Eshai elected to share Workers Compensation and Employers liability exposure, through a limit of $250,000 per claim and subject to an aggregate in the amount of $5,997,320. Further terms regarding the handling of and payment for Eshai's Workers' Compensation, Auto and CGL claims are found in Exhibit D to the TPA Agreement.

53. As a result Eshai was permitted to retain a third party administrator with regard to the claims submitted under the four insurance policies.

54. Eshai selected PMA as its Third Party Administrator.

55. The term of this agreement (Exhibit 5) was October 15, 2018 through October 15, 2019.

56. In return for the Managed Care Services provided under Exhibit 5, Eshai agreed to pay fees and costs to PMA as set forth in a Fee Schedule attached as an exhibit to Exhibit 5 (See Exhibit "D" to TPA Agreement).

57. Pursuant to this TPA Agreement and several amendments, material to this matter, PMA performed claims handling and administrative services and Eshai accepted such services. (See Amendment to Agreement for Third Party Claims Handling Services attached hereto and designated as Exhibit "14")

58. Despite PMA performing all of its obligations under the TPA Agreements and despite demand, Eshai has failed and refused to pay $447,315.73 due and owing under the TPA Agreement and Amendments thereto as reflected in the Statement attached hereto and designated as Exhibit "15". Separate billings for the eight itemized matters were timely billed by PMA to Eshai. However, despite demand, Eshai has failed, refused and neglected to pay PMAIC $447,315.73 due and owing in breach of its obligations under the TPA Agreement and relevant Amendments thereto. These component billings for various Claims Handling fees, annual Claims Administration fees, annual CINCH fees and post policy reconciled

Claims Handling fees on the Workers' Compensation, Auto and CGL Policies are attached hereto and designated as Exhibit "16".

WHEREFORE, it is respectfully demanded that this Court enter judgment in favor of Plaintiff, PMA and against defendants in the amount of $447,315.73, plus interest and costs of this action, including but not limited to reasonable attorney's fees incurred in prosecuting this action plus such further relief as this Court deems just and proper on Count II of plaintiff's Complaint.

## COUNT III

**PENNSYLVANIA MANUFACTURERS'ASSOCIATION INSURANCE COMPANY AND PMA MANAGEMENT CORP., V. USMAN ESHAI, A/K/A UTHMAN ESHAI INDIVIDUALLY AND AS A MEMBER OF ESHAI CORPORATION, DBA COURIER DISTRIBUTION SYSTEMS, LLC, ALI ESHAI INDIVIDUALLY AND AS A MEMBER OF ESHAI CORPORATION, DBA COURIER DISTRIBUTION SYSTEMS, LLC AND NAJEEB ESHAI INDIVIDUALLY AND AS A MEMBER OF ESHAI CORPORATION, DBA COURIER DISTRIBUTION SYSTEMS, LLC**

## THE PARTIES

59. Defendant Usman Eshai, a/k/a Uthman Eshai is an officer of Eshai Corporation d/b/a courier Distributions Systems, LLC ("Eshai Corporation") and owns 68.062828 % of the shares of Eshai Corporation.

60. Defendant Ali Eshai is an officer of Eshai Corporation d/b/a courier Distributions Systems, LLC ("Eshai Corporation") and owns 15.706806 % of the shares of Eshai Corporation.

61. Defendant Najeeb Eshai is an officer of Eshai Corporation d/b/a courier Distributions Systems, LLC ("Eshai Corporation") and owns .523560 % of the shares of Eshai Corporation. His wife, Rubina Eshai, owns 15.706806 % of the shares of Eshai Corporation.

## JURISDICTION

62. Jurisdiction in this matter is based upon 28 U.S.C. § 1332 in that the matter in controversy greatly exceeds $75,000 and is between citizens of different states.

63. All individual defendants are officers and members of the Esahi Corp, which is a Georgia LLC and all individual defendants are domiciled in Georgia.

64. All plaintiffs are incorporated in the Commonwealth of Pennsylvania.

65. Complete diversity exists between every defendant and every plaintiff.

66. Personal jurisdiction exists against each of the individual defendants as the individual defendants participated in and/or directed the undercapitalization of Eshai Corporation in Pennsylvania.

67. At all times relevant, Eshai Corporation had a business location in King of Prussia, PA.

68. At all times relevant, the individual Defendants personally took part in the undercapitalization of Eshai Corp., as well as directed other employees,

including but not limited to the COO of Eshai Corp., to engage in acts which resulted in the undercapitalization of Eshai Corporation as well as directing other employees to not pay the amounts due and owing to the Plaintiffs.

## **FACTUAL ALLEGATIONS**

69. At all times relevant, Usman Eshai a/k/a Uthman Eshai, Ali Eshai, and Najeeb Eshai owned and fully controlled Eshai Corporation.

70. In 2018 and 2019 Usman Eshai a/k/a Uthman Eshai, Ali Eshai, and Najeeb Eshai received excessive distributions as officers and members of Eshai Corporation which resulted in the undercapitalization of Eshai Corporation.

71. At all times relevant Usman Eshai a/k/a Uthman Eshai, Ali Eshai, and Najeeb Eshai as owners, officers and members of Eshai Corporation exercised complete domination over the company in its failure to pay the insurance premiums and retrospective adjustments/surtax on the four (4) insurance policies issued to Eshai Corporation, as well as the amounts due and owing to Plaintiffs under the TPA Agreement entered into by the company.

72. The excessive distributions received by Usman Eshai a/k/a Uthman Eshai, Ali Eshai, and Najeeb Eshai created a cash flow problem for the company, Eshai Corporation. As a result of the cash flow problem, the individuals participated in the decision and/or directed other employees in the company to not pay Plaintiffs the amounts due and owing on the four (4) insurance policies and under the TPA

including but not limited to the COO of Eshai Corp., to engage in acts which resulted in the undercapitalization of Eshai Corporation as well as directing other employees to not pay the amounts due and owing to the Plaintiffs.

## **FACTUAL ALLEGATIONS**

69. At all times relevant, Usman Eshai a/k/a Uthman Eshai, Ali Eshai, and Najeeb Eshai owned and fully controlled Eshai Corporation.

70. In 2018 and 2019 Usman Eshai a/k/a Uthman Eshai, Ali Eshai, and Najeeb Eshai received excessive distributions as officers and members of Eshai Corporation which resulted in the undercapitalization of Eshai Corporation.

71. At all times relevant Usman Eshai a/k/a Uthman Eshai, Ali Eshai, and Najeeb Eshai as owners, officers and members of Eshai Corporation exercised complete domination over the company in its failure to pay the insurance premiums and retrospective adjustments/surtax on the four (4) insurance policies issued to Eshai Corporation, as well as the amounts due and owing to Plaintiffs under the TPA Agreement entered into by the company.

72. The excessive distributions received by Usman Eshai a/k/a Uthman Eshai, Ali Eshai, and Najeeb Eshai created a cash flow problem for the company, Eshai Corporation. As a result of the cash flow problem, the individuals participated in the decision and/or directed other employees in the company to not pay Plaintiffs the amounts due and owing on the four (4) insurance policies and under the TPA

Agreement, but instead, pay the money that was required to bind auto coverage and worker's compensation coverage with a new insurance carrier at the renewal period.

73. The payment of insurance premiums, costs, and fees are a major expense of Eshai Corporation. The excessive distributions received by Usman Eshai a/k/a Uthman Eshai, Ali Eshai, and Najeeb Eshai resulted in the company's inability to pay the insurance premiums, costs, and fees due and owing to the Plaintiffs.

74. Usman Eshai a/k/a Uthman Eshai, Ali Eshai, and Najeeb Eshai failed to observe corporate formalities, substantially intermingled corporate and personal affairs, left the corporation grossly undercapitalized, and used the corporation as a façade or alter ego.

75. The excessive distributions received by Usman Eshai a/k/a Uthman Eshai, Ali Eshai, and Najeeb Eshai directly resulted in the wrongful act directed to the Plaintiffs, the failure to pay insurance premiums, costs, and fees as well as TPA Agreement fees and costs due and owing to the Plaintiffs.

76. As a direct result of the actions of Usman Eshai a/k/a Uthman Eshai, Ali Eshai, and Najeeb Eshai set forth above, Eshai Corporation, pursuant to the complete dominion and control exercised by the individual Eshais, failed and refused to pay the amounts due and owing under all four (4) insurance policies issued by Plaintiffs as well as the fees and costs due and owing pursuant to the TPA Agreement entered into by the company with Plaintiffs.

WHEREFORE, it is respectfully demanded that this Court enter judgment in favor of Plaintiffs and against Usman Eshai a/k/a Uthman Eshai, Ali Eshai, and Najeeb Eshai in the amounts of $434,769.00, $7,333,935.00, $378,613.55 and $22,601.46, set forth in Count I of this Amended Complaint for a total judgment of $8,169,919.01 for the claims set forth pursuant to Count I.  Furthermore, it is respectfully demanded that this Court enter judgment in favor of Plaintiffs and against Usman Eshai a/k/a Uthman Eshai, Ali Eshai, and Najeeb Eshai in the amount of $447,315.73 for the claims forth in Count II of this Amended Complaint, plus interest and costs of this action, including but not limited to reasonable attorney's fees incurred in prosecuting this action plus such further relief as this Court deems just and proper.

                SHERR LAW GROUP, LLP

BY: _____
      ANTHONY R. SHERR, ESQUIRE
      Attorney for Plaintiff
      Pennsylvania Manufacturers
      Association Insurance Company and
      PMA Management Corp.